# CHARLESTON

ATKINS V. GREY EAGLE COAL CO.

Submitted March 2, 1915.   Decided March 16, 1915.

CONSTITUTIONAL LAW—*Master and Servant—Police Power—Right of Contract—Payment of Wages.*

Section 80, Ch. 15H, Code 1913, forbidding under penalty "any corporation, company, firm or person, engaged in any trade or business, either directly or indirectly, to issue, sell, give or deliver to any person employed by" such corporation, company, firm or person, "in payment of wages due such laborer, or as advances for labor not due, any scrip, token, draft, check or other evidence of indebtedness payable or redeemable otherwise than in lawful money", and providing that such "scrip, token, draft, check or other evidence of indebtedness shall be construed, taken and held in all courts and places to be a promise to pay the sum specified therein in lawful money by the corporation, company, firm or person issuing, selling, giving or delivering the same, to the person named therein, or to the holder thereof", does not violate any constitutional provision, or unduly curtail the right of contract, and is therefore not an illegitimate exercise of the state's police power.

Error to Circuit Court, Mingo County.

Action by J. Dennis Atkins, sole trader, etc., against the Grey Eagle Coal Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Wiles & Bias,* for plaintiff in error.

*A. A. Lilly,* for defendant in error.

LYNCH, JUDGE:

As owner, by purchase in due course, of scrip, or disks, of denominations ranging from five cents to one dollar, payable in merchandise, signed, issued and delivered by the Grey Eagle Coal Company, a coal mining corporation organized and doing business under the laws of this state, to its employees, J. Dennis Atkins, trading as the Atkins Company, brought suit before a justice of the peace of Mingo county to recover from the coal company the total face value of such scrip, amounting to the sum of $72.   From a judgment for

that amount, defendant appealed to the circuit court, wherein, upon an agreed statement of facts, judgment for a like sum was again rendered against defendant, and it obtained a writ of error thereto, the sole question involved and determinable here being the validity of the act forbidding, under penalty of fine and imprisonment, ''any corporation, company, firm or person, engaged in any trade or business, either directly or indirectly, to issue, sell, give or deliver to any person employed by'' such corporation, company, firm or person, ''in payment of wages due such laborer, or as advances for labor not due, any scrip, token, draft, check or other evidence of indebtedness payable or redeemable otherwise than in lawful money'', and providing that such ''scrip, token, draft, check or other evidence of indebtedness shall be construed, taken and held in all courts and places to be a promise to pay the sum specified therein in lawful money by the corporation, company, firm or person issuing, selling, giving or delivering the same, to the person named therein, or to the holder thereof''. §80, Ch. 15H, Code 1913. The only other question urged for reversal can not be considered on this review, even if meritorious, though we do not so consider it; because, except as to the validity of the act, this court is without jurisdiction, the amount involved being less than one hundred dollars.

The objection urged to the act in question is that ordinarily interposed as to legislative enactments of a similar character, the charge being that the act is in violation of the federal constitution, imposes undue restrictions upon the liberty of contract, and is not a legitimate exercise of the police power of the state.

While the present statute differs in material respects from the act construed and held invalid in *State* v. *Goodwill,* 33 W. Va. 179, it is the same act construed and held valid in *State* v. *Peel Splint Coal Co.,* 36 W. Va. 802, though by an equally divided court. The former act (Ch. 63, Acts 1887) embraced within its inhibition only persons engaged in certain specifically designated business activities, while the latter in express terms embraces all persons, firms, companies and corporations engaged in any trade, calling or business. The discrimination manifestly appearing from the act of 1887, though not

generally recognized in criticisms directed against the decision in the Goodwill case, was the real basis of such decision, as readily appears from the first point of the syllabus. The act imposed no restrictions upon employers of labor engaged in other trades or callings where the propriety or necessity therefor was equally apparent. That feature, however, was eliminated by the subsequent act, the one upheld in the Peel Splint Case, and the one involved here, Ch. 76, Acts 1891.

In the opinion in the last case, Judge LUCAS cites many instances of similar regulations by Parliament, generally known as "truck acts", and by acts of the several states, and reaches the conclusion epitomized in the syllabus prepared and adopted by the court. The argument so well sustained by him need not now be restated or amplified. The trend of it is that the freedom of individual contract must yield to due legislative restraint whenever necessary to conserve the public health, safety and morals and to promote the general welfare and peace of the community; and ordinarily such is the basis of the decisions in other jurisdictions upon similar statutes. The court, in *Hancock* v. *Yaden,* 121 Ind. 366, said: "It is a fundamental principle that every member of society surrenders something of his absolute or natural rights in all organized states".

Reluctant, as apparently it seems to be, to hold valid any legislation tending towards infringement of the right of an individual citizen to enter into such contracts as he may deem advisable, the Supreme Court of New York upheld a recent statute requiring every factory and mercantile establishment to give to each of its employees an opportunity for twenty-four consecutive hours rest in every seven days. *People* v. *Klinck Packing Co.,* 52 N. Y. Law Journal 1925. So state legislation limiting hours of service in dangerous employments; requiring semi-monthly payment of wages to employees; requiring payment of wages in money instead of merchandise; securing a just standard for determining wages, has been upheld by the Supreme Court of the United States as not violative of the federal constitution or as imposing unwarranted restrictions upon the liberty of contract. *Holden* v. *Hardy,* 169 U. S. 366; *Miller* v. *Oregon,* 208 U. S. 412; *Railroad Co.* v. *Williams,* 233 U. S. 685, affirming 199 N. Y.

108; *Harbison* v. *Iron Co.,* 183 U. S. 13, affirming 103 Tenn. 421; *McLean* v. *Arkansas,* 211 U. S. 539. See also "Liberty of Contract", by Prof. Roscoe Pound, 18 Yale Law Journal 454; note on "Freedom of Contract Under Constitution", 28 Harvard Law Review 496.

Many comparatively recent cases decided by the state courts have held, on various grounds, legislative enactments similar to the one now under review not subject to challenge as contravening the supreme or fundamental law of the state or general government. Some have taken the position that payment of wages by persons or corporations to their employees is a matter of vital concern to the general public, and that it is therefore within the power of the legislature to prescribe the mode of payment. *Hancock* v. *Yaden, supra; Harbison* v. *Iron Co., supra.* Such doubtless was the view, and in our judgment not an erroneous one, that prompted the enactment of the statute now being considered. Its purpose evidently was the elimination of one of the prime motives or causes alleged for the unfortunately prevalent and frequently recurring labor disputes and disturbances that have recently grievously afflicted this and other states, resulting in incalculable loss alike to employer and employee. The opinion in the Peel Splint Coal Company case was in part also predicated upon the right of the state to impose subsequent conditions upon companies chartered and doing business in, and under the laws of, this state.

*Coal Co.* v. *Commonwealth,* 96 Ky. 218, denying infringement of any constitutional provision or curtailment of freedom of contract, upheld a penal statute forbidding payment of wages to employees otherwise than in money, but justified the act as one intended to protect against imposition and oppression. Such seems to be the purpose of the English "truck acts". 2 Labatt M. & S. §§824-6. Acting in the capacity of an advisor to the legislature, the Supreme Court of Colorado, 48 Pac. 512, held: "Legislation having for its object the protection of laborers from oppression and fraud by prohibiting issuance by employers, in payment of wages, of scrip or orders redeemable in goods at exorbitant prices, may properly be enacted under the police powers of the state."

Without detailing the provisions of the various state statutes held valid, or the reasons assigned therefor, except to state that, though expressed in terms somewhat different, they are substantially of the same purport and effect, and have in view the same general purpose as our own, we cite the cases *infra* as authority for the proposition that the provisions challenged by defendant do not conflict with the constitution of the United States or of this state. *Shaffer* v. *Mining Co.,* 55 Md. 74; *Johnson* v. *Mills,* 68 S. C. 339; *Shortall* v. *Puget Sound Co.,* 45 Wash. 290; *Lawrence* v. *Railroad Co.,* 80 Vt. 370; *Sawmill Co.* v. *Felsenthal,* 85 Ark. 346; *Regan* v. *Lumber Co.,* 134 La. 199; see also 8 Labatt M. & S. §2820. Though declaring a statute providing an eight hour day for workingmen in mines, smelters and mills for the reduction of ores not unconstitutional, the reasoning of the court in *Ex Parte Boyce,* 27 Nev. 299, and *Ex Parte Kair,* 28 Nev. 127, 425, is equally forceful in support of the statute now under consideration.

We do not think the statute challenged by defendant violates any constitutional provision, or unduly curtails the right of contract, or is an illegitimate exercise of the state's police power. So thinking, we affirm the judgment of which complaint is made.

*Affirmed.*