C. L. WHITE *v.* RALEIGH WYOMING MINING COMPANY

(No. 7050)

Submitted February 7, 1933. Decided March 28, 1933.

*Grover C. Worrell*, for plaintiff in error.

*Bailey & Shannon*, for defendant in error.

*Rummell, Blagg & Stone*, for West Virginia Coal Association as *amicus curiae*.

HATCHER, JUDGE:

This action was brought by the assignee of scrip stamped "Not transferable", to recover of the obligor in money. The

scrip was issued in 1930 under Acts 1927, chapter 37, by an employer to his employees, in payment for labor performed. The circuit court sustained a demurrer to the declaration.

The Act of 1927 provided that non-transferable scrip should be issued "upon request of any employee"; that it should be "redeemable in merchandise only by the employee to whom issued"; and should be taken as a promise by the obligor to pay "to the employee to whom issued, in lawful money * * * upon demand and surrender by said employee of such scrip or unused portion thereof" at the regular pay day, etc.

The plaintiff contends that the statute is unconstitutional because (1) it coerces employees to purchase merchandise from their employer, and (2) it is a limitation on the use of property.

(1) Since the scrip is issued only upon the request of the employee and the statute requires the employer to take up the scrip in cash at the regular pay day, we do not observe any coercion.

(2) In support of plaintiff's second proposition, he submitted the following cases which held against limitation on the right to assign: *Bewick Co.* v. *Hall,* 94 Ga. 539, 21 S. E. 154; *Thomassen* v. *De Goey,* 133 Iowa 278, 110 N. W. 581; *Leader Co.* v. *Little Rock Co.,* 120 Ark. 221, 179 S. W. 358; *Pond Cr. Co.* v. *Lester,* 171 Ky. 811, 188 S. W. 907; and *State* v. *Goodwill,* 33 W. Va. 179, 10 S. E. 285. The Georgia and Iowa decisions were based squarely on statutes unlike ours, which opposed such limitation. The contract in the Arkansas case had "two repugnant provisions" one of which gave the right to assign, and the court adopted it. In the Kentucky case, the court simply *did not approve of the statute.* See page 817. We have adopted the view that the policy of a statute is not our concern. *State Road Com.* v. *County Court,* 112 W. Va. 98, 163 S. E. 815. We are not its apologist nor its critic. It is immaterial whether or not it meets with our approval provided it is a legitimate exercise of legislative power. "Neither the excellence nor the defects of a legislative scheme may be permitted to determine the constitutionality of a state statute." *Chicago etc. Rr. Co.* v. *McGuire,* 219 U. S. 549. We are therefore impressed that plaintiff's citations from other courts are not relevant here.

In *State* v. *Goodwill,* this Court did stress "the most sacred and inviolable" right of an individual to do as he pleased with his property (labor). That case was decided in 1889, and since then the growing complexity of our civilization has caused the courts generally to moderate their views on the detachment of the individual. In 1910, the Supreme Court of the United States said in *Chicago etc. Rr. Co.* v. *McGuire, supra*: "There is no absolute freedom to do as one wills or to contract as one chooses. The guarantee of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." In *Atkins* v. *Coal Co.,* 76 W. Va. 27, 29, 84 S. E. 906, 907, decided in 1915, this Court abandoned definitely the attitude taken in *State* v. *Goodwill,* and approved the argument of Judge Lucas in *State* v. *Peel Splint Co.,* 36 W. Va. 802, 15 S. E. 1000, saying: "The argument so well sustained by him need not now be restated or amplified. The trend of it is that the freedom of individual contract must yield to due legislative restraint whenever necessary to conserve the public health, safety and morals and to promote the general welfare and peace of the community." In The Spirit of The Common Law, published in 1921, Dean Pound pointed out certain "noteworthy changes in the law in the present generation" which he said were "in the spirit of recent ethics, recent philosophy and recent political thought." One of the changes was "limitations upon freedom of contract." See pp. 185-6.

The Am. & Eng. Ency. of Law is one of our most reliable reference books though published nearly forty years ago. It states unequivocally, Vol. 2, p. 1035, "The parties to a contract may in terms prohibit its assignment, so that neither their personal representatives nor assignees can succeed to any rights in virtue of it." The same rule is recognized in such later authorities as Annotation (1903), 88 Am. St. Rep. 201; Annotation (1912) Am. & Eng. Ann. Cases, 1912A, p. 363; 2 R. C. L. (1914) subject Assignments, sec. 6; Williston on Contracts (1920), sec. 422; The A. L. I. Restatement of

the Law of Contracts (1928), Draft No. 1, sec. 151; and MacMillan's Selected Readings on the Law of Contracts (1931), pp. 731-2. If assignment of a contract may be prohibited lawfully by the contracting parties themselves, we see no invasion of personal rights by a legislative scheme sanctioning such prohibition when the scheme is entirely optional, as in this case.

Statutes prohibiting the assignment of wages to be earned or to become due have been held not to violate the organic law. *International Co.* v. *Weissinger,* 160 Ind. 349, 65 N. E. 521, 98 Am. St. Rep. 334; *Heller* v. *Lutz,* 254 Mo. 704, 164 S. W. 123, L. R. A. 1915B 191; *Wight* v. *Rr. Co.,* (Md.) 125 Atl. 881, 37 A. L. R. 864 (see annotation p. 872). An ordinance was declared valid which provided that city employees should not assign their claims for wages. *State ex rel.* v. *Kent,* (Mo.) 71 S. W. 1066. A stipulation in a bill of lading that it should not be assigned was validated. *Bonds Co.* v. *Ry. Co.,* (Wash.) 101 Pac. 877. Prohibition of assignment was upheld in relation to a merchant's trading stamps which were marked *not transferable. Sperry & Co.* v. *Weber & Co.,* 161 Fed. 219; *Sperry & Co.* v. *Siegel & Co.,* 309 Ill. 193, 140 N. E. 864. The rule has been applied specifically to contracts between employer and employee in the absence of statutory provision. See the leading cases of *Barringer* v. *Construction Co.,* 23 Okla. 131, 99 Pac. 775, 21 L. R. A. (N. S.) 597, and *Tabler Co.* v. *Sheffield Co.,* 79 Ala. 377, 58 Am. Rep. 593, and authorities therein referred to. We quote from the Alabama case as equally applicable here: "The certificates show, on their face, that they were payable to the employees only, and to no one else. They are expressly declared not to be transferable, which negatives any promise of defendant, otherwise implied, that payment would be made to any assignee or transferee of the holders. They were issued with this express understanding, which was assented to by the employees, when they received them; and the plaintiffs took the instruments with full notice of this restriction, because it appeared on the face of the paper. The transferability of the paper was thus destroyed, by the consent of the original parties to it. It cannot be said that the policy of the law is opposed to the restriction thus imposed."

With the principle so thoroughly established that assignments may be lawfully prohibited by agreement of the contracting parties and with that principle so uniformily applied by the courts, we have no hesitancy in holding that the scrip statute as amended in 1927, does not unduly curtail the right of contract.

Plaintiff's brief refers to Code 1923, chapter 99, section 14, which provides that an assignee of non-negotiable paper may sue in his own name, etc. That section, of course, refers only to a valid assignment, not to one like this which is invalid.

The judgment of the circuit court is affirmed.

*Affirmed.*