# CHARLESTON.

THE TWENTIETH STREET BANK *v.* J. M. SUMMERS *et al.*

Submitted January 17, 1922.        Decided January 24, 1922.

1. CONTRACTS—*Provision for Payments Under Building Contract on Architects Estimate Held Not to Create Absolute Liability.*

   Where, by the terms of a contract for the construction of a building, it is provided that payments shall be made upon estimates made by the architect in charge as the work progresses, an estimate so made does not create any absolute liability upon the owner to pay the same, either to the contractor or his assignee, if the contract provides that he may retain any amount which may become due and payable to the contractor for the satisfaction of liens or claims of laborers or material men which may be asserted against him or the building, it appearing that at the time such estimate was given there were then claims which might be made valid liens against the building largely in excess of the amount of the estimate. (p. 93).

2. ASSIGNMENTS—*Order on Owner of Building to Pay Third Person Imposes Obligation Only if Outstanding Claims Paid.*

   An order given by a building contractor to a third party, and accepted by the owner of the building, directing him to pay such third party all monies which may thereafter become due to such contractor under the terms of the building contract, imposes no obligation upon the owner of such building to pay anything upon such order, unless there remains some amount payable under the terms of the contract after dis-

charging all liens or claims for labor and material upon the building, where, by the terms of such contract, the owner has the right to withhold any monies payable thereunder for the purpose of discharging such liens or claims.   (p. 94).

MILLER, JUDGE, dissenting.

Error to Circuit Court, Cabell County.

Action by the Twentieth Street Bank against J. M. Summers and others.   Judgement for defendants and plaintiff brings error.

*Affirmed.*

*John H. Holt* and *W. K. Cowden,* for plaintiff in error.
*Warth, McCullough & Peyton* and *D. B. Daugherty,* for defendants in error.

RITZ, JUDGE:

Plaintiff, by this writ of error, seeks reversal of a judgment rendered upon the verdict of the jury in favor of the defendants.

It appears that on the 29th of August, 1919, the defendants entered into a contract with one J. E. Berry for the construction of a three story brick garage building in the city of Huntington, at the price of $38,320.00.   The contract provided that the price agreed upon should be paid in instalments upon estimates made by L. J. Dean, the architect in charge of the construction of said building, and there is a further provision that if at any time there should be evidence of any lien or claim for which, if established, the owner of the premises might become liable, the owner should have the right to retain out of any payments then due, or thereafter to become due, a sufficient amount to completely indemnify the owner against such lien or claim.   Shortly after the contract was entered into Berry entered upon the work, and prior to the fourth of November, 1919, there had been made by the architect four estimates amounting to the sum of $6,300.00, all of which had been paid.   On the 4th of November, 1919, the architect made another estimate amounting to $3,000.00, and

issued to Berry a certificate therefor which, under the terms
of the contract, entitled Berry to receive from the defendants
the sum of $3,000.00 provided, of course, there were no liens
or claims outstanding which might successfully be asserted
against them or their building. It is not quite clear whether
Berry presented this three-thousand dollar estimate to the
defendants and demanded payment of it or not, but if he
did payment was refused. For the purposes of this case we
do not think this is very material. He presented it to the
plaintiff bank and desired to attach it as collateral to a note
for the purpose of borrowing money. The cashier of the
bank refused to loan any money on such collateral, and Ber-
ry then executed an order directing the defendants to there-
after make all payments due him under the contract to The
Twentieth Street Bank, and charge the same to his account,
stating therein that all certificates issued by the architect be
receipted by him and checks made payable to the bank. This
order was accepted by the defendants. It is dated the 6th
of November, 1919. Berry then went to the plaintiff bank
with the three thousand dollar estimate above referred to,
and this order, and upon his executing a note for two thous-
and dollars and securing the same by the deposit of the three
thousand-dollar estimate as collateral, and turning over the
order above referred to, the bank placed the amount of the
note to his credit. It appears that about this time there were
some advances in the prices of materials and labor for which
reason it became apparent that Berry was not going to be
able to make any money on the contract as he had contem-
plated when he entered into it. In fact, it is shown without
contradiction that in order to protect their building from
the claims of material men and laborers the defendants, with
the assent of Berry, paid all money, except the $6300.00
which had been paid before November 4th, directly to the
people furnishing material or labor for the building, and that
when it was finally completed the defendants had paid on
account of such labor and materials $350.00 in excess of the
amount which Berry was entitled to reeive under his contract,
for which sum he executed his note to the defendants. Upon
the refusal of the defendants to pay the bank the estimate

of $3000.00, or any sum on the order above referred to, this suit was brought seeking to recover upon said estimate for $3000.00 and said order given by Berry as aforesaid. The trial of the case before a jury resulted in a verdict for the defendants, upon which the court rendered judgment.

It is not quite clear to us upon just what theory the plaintiff expected to recover under the facts shown in this case. It cannot be contended that the architect's estimate for $3000.00 was a negotiable instrument, the transfer of which to the bank created any liability upon the defendants, nor can it be contended that the assignment or order given by Berry of the funds coming to him under the contract vested any rights in the bank which Berry himself would not have. It is true, the evidence shows that the cashier of the bank called up the architect Dean and made inquiry of him in regard to this estimate of $3000.00, and was informed by the architect that it was as good as gold, and there is a contention that Dean, being the agent of the owners of the building, by this declaration estopped his principals to say that they did not owe Berry $3000.00 at that time. This might be true if Dean was a general agent of the defendants. His powers, however, to act for the defendants are defined by the contract, and it is familiar doctrine that one dealing with an agent must take notice of his authority. There is no provision of the contract which expressly or by implication gives Dean any authority to deal for his principal with outside people. His duties under the contract simply relate to the dealings of the parties thereto *inter sese,* and as to these duties, or some of them, as was held in *Berry* v. *Masonic Temple Association,* 80 W. Va. 342, he was the agent of the owners, but this was the extent of his agency. It is apparent that the cashier of the bank knew that the architect's estimate was in no sense a promise of the owner to pay money. If he did consider it such a promise he must have known that there was something wrong with it for the very good reason that it would be an anomalous situation indeed for a man who had an unequivocal promise of a perfectly solvent party to pay him $3000.00 which was then due to take it to a bank and deposit it as collateral to borrow money on. The very fact that

this estimate was not paid by the owner was evidence that the owner contested his liability to pay the amount thereof upon some ground. The cashier of the bank knew this and refused to loan any money on it. It was then that Berry executed the order above referred to, and the plaintiff contends that under this order it was entitled to receive all of the money thereafter to be paid under the contract, and notwithstanding it makes this contention it only brings this suit for $3500.00, when there was more than $30,000.00 thereafter paid upon the contract.

What was the effect, however, of the order given by Berry to the bank? It directed the owners to pay to the bank such sums as might thereafter become due to Berry under the terms of the contract. The contract by its very terms authorized the owners of the building to withhold any part of the contract price necessary to protect them against liens or claims for material or labor, so that it may be said that until all claims for material and labor upon the building were satified there was no amount due or payable to Berry. The evidence is uncontradicted that the owners of the building never paid Berry one dollar after this order was accepted by them, but on the contrary applied every dollar payable under the contract to the discharge of the claims of laborers and material men. In doing this they were clearly within their rights. The bank, by taking this assignment could get on no higher ground than its assignor Berry. If the defendants under their contract with Berry had the right to pay off and discharge these claims of laborers and material men, then the bank cannot complain if nothing was left to pay its debt under the assignment. It could maintain a suit against the defendants to recover upon the order only in case Berry could successfully maintain such suit had he not given the order, and it is very apparent that no such suit could be maintained by Berry under the facts shown here.

It is insisted that at the time the $3000.00 estimate was given the defendants were actually liable to pay Berry that sum of money. It is shown in the evidence that at that time the defendants had accepted liability for a bill of lumber amounting to $5000.00, of which the architect knew nothing

when he made this estimate, and that it was for that reason that the defendants refused to pay the same.　It is true, part of this lumber had not been delivered upon the ground at that time, but this can make no difference.　It had been contracted for and the defendants had undertaken' to pay for it.　Nor can it make any difference that they paid for it by furnishing to the lumber dealer an automobile and a truck when the contract provides that the estimates shall be paid in current funds.　If the parties to whom it was payable chose to accept something else besides current funds that was a matter of which the plaintiff cannot complain.　It was in no wise affected thereby.　It clearly appears that at the time this $3000.00 estimate was given there were claims for which the defendants might be liable largely in excess of that amount, and which claims were subsequently paid. Under these circumstances they had a right to withhold the payment of the architect's estimate by the express terms of the contract.

There is complaint made that the court allowed the defendants to introduce evidence to show that after this order was accepted by the defendants, they, or one of them, went to the plaintiff bank with Berry and stated that it was inconvenient to bring all the checks to the bank and have the bank pay them out to the laborers and material men, and arranged for the owners to pay directly to the laborers and material men such amounts as might be due, and that the cashier of the bank agreed that this might be done so long as the defendants paid no money for any purpose except for labor and material which went into the building.　It is contended that this was an attempt to prove a surrender by the cashier of the bank of some of its securities.　Such is not the case at all.　It simply shows that the cashier of this bank construed the obligation of the defendants under this order just exactly as they construed it, and that was that they were to pay to the bank any sums which might become payable to Berry under the contract.　While we do not think there was any necessity of introducing any evidence to show what the obligation of the defendants was under the order, still it could injure no one to prove that both

the parties interpreted their obligations to be just what the order and its acceptance made them.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*

MILLER, JUDGE, (*dissenting*):

I must record my dissent.    The contract pleaded is that by assignment of the contractor to plaintiff of estimate No. 5, issued to him by the architect pursuant to the terms of the contract along with the accepted order of Berry upon them, the defendants thereby agreed to make all payments thereafter due the said Berry on the construction of defendants' building to the plaintiff, and whereby the said defendants thereby became liable to pay the plaintiff the amount of said estimate of $3,000.00.

Defendants agreed to pay the bank, not only the particular estimate No. 5, but all other estimates.    Stress is laid in the opinion on the language of the order to "hereafter make all payments due me," as tending to show that estimate No. 5 could not have been included in the acceptance inasmuch as it was then due according to its terms, and not to become due.    But the promise was to "hereafter make all payments due me" to the bank; all payments that were thereafter made were to be made to the bank.    The theory of the opinion is that properly construed the undertaking of the defendants was simply to pay plaintiff what, if anything, might be found due Berry in final settlement.    I do not see how the language or the acts of the parties can be so interpreted.    True, defendants untrameled by the estimate and their acceptance of the order had the right to protect themselves against the breaches by Berry of his contract.    By the terms of that contract, never recorded, defendants were to pay Berry from time to time on estimate issued by the architect, their agent.

The evidence shows that certificate No. 5 and the accepted order of defendants were assigned by delivery thereof to the plaintiff as collateral to Berry's note for $2,000.00, the proceeds of which were placed to his credit and checked out by him; that plaintiff refused to accept said collateral until

Berry procured the acceptance by defendants of said order. Moreover, Summers, a witness for defendants, admits that he knew before acceptance of said order that Berry was procuring estimate No. 5 of the architect for the purpose of securing money on it at the bank.    Berry swears that McAboy, the cashier, would not loan him the money on the certified estimate unless he procured from defendants acceptance of said order.

Installments due or to become due upon building contracts are assignable.    *Adler* v. *Kansas City, Etc. Ry. Co.,* 92 Mo. 242; *Stevenson* v. *Kyle,* 42 W. Va. 229.    Such assignments may be oral if the acts of the parties evince such intention. *Tingler* v. *Fisher,* 20 W. Va. 497; *Hughes* v. *Frum,* 41 W. Va. 445.    And with the consent of the debtor they become binding, and actions at law may be founded thereon.    1 Enc. Dig. Va. & W. Va. Reports, 765.

The fact, if true, that the architect may not have known that a lumber bill of $5,000.00 had been contracted for on behalf of Berry, is unimportant.    The evidence makes it quite certain that little of this lumber was on the ground, and though it was to be paid for in automobiles or trucks, they had not been delivered, and the lumber was not included in any estimate for more than a month after the date of estimate No. 5.    But suppose estimate No. 5 was issued by mistake of the architect.    Summers knew at the time and before it was assigned to the bank that it was going to be issued and that Berry was intending to make use of it as collateral to raise money at the bank, and with this knowlegde accepted Berry's order to pay it and all other estimates to the bank.    Suppose the estimate had been a note, which had been paid, or based on no consideration, but left in the hands of the payee, would not the maker under like or similar facts and circumstances be estopped to deny his liability on the note?    The estimate with defendants' accepted order to pay it, was the equivalent of promise to pay it to the bank.    *Eberly Company* v. *Gibson,* (Va.),    58 S. E. 591; *Selden* v. *Williams,* (Va.), 62 S. E. 380.

The certified estimate and the accepted order of defendants constituted collateral securities in the hands  of  the  bank

for the payment of Berry's note; and if we accept as true the evidence of Summers, that McAboy, the cashier, waived this security, the evidences thereof were not sustained, and the cashier was without authority to waive the bank's rights. Such action was not within his implied powers, and no specific authority is shown. ' 1 Michie on Banks and Banking, 740.