BLUEFIELD SUPPLY COMPANY *v.* M. P. SMITH CONSTRUCTION COMPANY *et al.*

(No. 8027)

Submitted October 24, 1934. Decided November 20, 1934.

538

*Arthur F. Kingdon,* for appellant.

*Walter C. Plunkett* and *Fitzpatrick, Brown & Davis,* for appellees Virginian & Western Ry. Co., Nelson and Chase & Gilbert Co., and Hartford Accident & Indemnity Co.

KENNA, JUDGE:

This suit was brought in the circuit court of Wyoming County by Bluefield Supply Company against M. P. Smith Construction Company, Nelson and Chase & Gilbert Company, Virginian & Western Railway Company and Hartford Accident & Indemnity Company. The suit seeks recovery upon a bond given pursuant to section 22, article 2, chapter 38 of the Code by Nelson and Chase & Gilbert Company, as principal contractor, and Hartford Accident & Indemnity Company, as surety, to Virginian & Western Railway Company as the owner of premises upon which a railway grade and certain tunnels were about to be built by the contractor. The bond was in the amount of $900,000.00, and the bill seeks to recover the amount of certain materials, supplies, equipment, etc., furnished by the plaintiff to M. P. Smith Construction Company, which was a sub-contractor under Nelson and Chase & Gilbert Company for the construction of certain tunnels included in the principal contract. Relief is sought against the railway company, against the principal contractor and the surety on its bond, and the sub-contractor, the relief sought against the railway company, of course, being restricted to a statutory lien upon its premises.

The matter was referred to a commissioner in chancery and a great deal of evidence was taken concerning what, if any, part of plaintiff's claim was lienable. The

commissioner classified all of the articles claimed to be lienable under six different sub-divisions and reported as lienable, items in the amount of $8700.58; which was increased in the court's decree to $8877.73. The plaintiff had claimed that an aggregate of $15,612.40 should be held lienable and covered by the bond. It had also claimed interest in excess of that allowed. On the other hand, the defendant surety company, one of the appellees, had claimed, first, that the tunnels upon which the work was done were not structures within the meaning of the materialman's statute (Code, 38-2-4), and, second, that the mechanic's lien, and consequently the penalty of the bond, were to be rigidly restricted to such articles only as had actually become a component part of the completed building or structure. These, it contended, amounted to but $531.20; and third, the defendant contended that the court should have applied certain credits paid by the contractor to the plaintiff for the benefit of the surety and in extinguishment of its charges for lienable articles, instead of permitting plaintiff to apply them to non-lienable charges. From the decree, the plaintiff prosecutes this appeal, and the defendant surety company assigns cross-error.

We cannot agree with the contention of the defendant below to the effect that a railway tunnel is not a structure within the meaning of the mechanic's lien statute. In *Moriconi* v. *Railway Co.*, 106 W. Va. 74, 145 S. E. 599, a lien for the cost of railway grading was sustained. We see little, if any, difference in principle between preparing the ground beneath the tracks of a railway so that trains may run *on* it and preparing the space above a railway so that trains may run *through* it. Each adds to the utility and value of the property. We think a tunnel is a structure within the meaning of the statute just as is a railway grade.

The commissioner in chancery adopted two general classifications of property that were carried into the decree. First, it was reported that all articles actually consumed in the performance of the contract were lienable, and, further, that all articles of a nature that would

be consumed on the job, whether consumed or not, were lienable. For the reasons hereinafter given, we are of opinion that this method of classification is erroneous.

The case was presented in the trial court on the theory that the bond given under 38-2-22, Code, must respond for the payment of all liens perfected under 38-2-4, Code.

This court has not recently had before it the question of what constitutes lienable charges under section 4 of article 2 of chapter 38 of the Code (lien of materialmen furnishing supplies to contractors), but cases involving the construction of section 39 of article 2 of chapter 38, Code (formerly section 12 of chapter 75, Code 1923), and section 16 of article 4 of chapter 17 (section 25 of chapter 43, Code 1923), have recently been decided. These cases involved, not a recovery under section 22 of article 2 of chapter 38, as in this case, which will be discussed hereafter, but a recovery under the bond required of contractors doing public construction where there is no mechanic's lien. However, as this court has heretofore observed, on account of the close relationship of the subject matter and the almost identical phraseology used, we believe that the materialman's lien statute naturally formed the basis for the principles laid down in the cases involving recovery under bond given for the satisfaction of claims against contractors for the building of public structures.

In *Hicks* v. *Randich,* 106 W. Va. 109, 144 S. E. 887, it was held that the bond given by a contractor on a county-district road was to be read in connection with section 104, chapter 43, and section 12 of chapter 75, Code 1923, and that the surety on his bond was liable for the reasonable value of repair parts placed in trucks used on the job, although the repair parts were not totally destroyed by use or otherwise during the progress of the work.

In *Julian* v. *Cavin,* 111 W. Va. 395, 162 S. E. 318, the principal and sureties in a bond given under section 12 of chapter 75 of the Code of 1923, were held liable for the rental of machinery necessarily used in the construction of a public road.

In *Rhodes* v. *Riley*, 113 W. Va. 679, 169 S. E. 525, the contractor and his sureties in a bond given under section 12 of chapter 75, Code 1923, were held not liable for the rental price of anything, such as a tractor, which should be a part of the contractor's regular equipment, the opinion in the case declaring: "It does not appear in that case [Julian v. Cavin] whether the roller should have been a part of the contractor's regular equipment. If not, and if used exclusively and consumed entirely on that particular job, the roller would be included under the term 'equipment' as used in section 12, and the opinion would be justified for that reason."

In *National Equipment Corporation* v. *Pinnell,* 114 W. Va. 558, 172 S. E. 790, the conditions of the bond required by 17-4-16, Code, and 38-2-39, Code, were construed as meaning the same thing. In that case, the price of machines called "dumptors" was held to be not lienable because plainly the machines were a part of what should have been the contractor's regular equipment for the job.

It seems to us that an examination of the foregoing cases will result in the conclusion that three main principles, plainly to be adduced from them, should govern the decision of this case. These principles involve mixed questions of law and fact, and are to be applied after full consideration is given to all of the circumstances of each particular case, including the nature of the contract, its duration, and the nature of the equipment, tools and machinery that should constitute the regular equipment of a contractor undertaking the kind of work contemplated by the contract. There is always danger in an attempted re-statement of settled principles, and what follows is not intended as a re-statement, but is said simply to direct attention to what we regard as the well settled rules that should be brought to bear upon this case, and is not to be taken as a modification of, or as a departure from, the principles laid down in any of the cases mentioned.

In the first place, the case of *Rhodes* v. *Riley* makes it plain that if the articles, charges for which are sought to be made lienable, were such as should have been in-

cluded in the contractor's regular equipment for the job that he undertook, they are not lienable. This should have been the first inquiry here and the commissioner should have reported, if necessary, a classification of articles along this line.

In the second place, charges for parts entering into incidental repairs, made during the continuance of the work, whether consumed upon the job or not, are lienable. See *Hicks* v. *Randich,* 106 W. Va. 109, 144 S. E. 887. This is another classification that should have been made by the commissioner, and in making it, the distinction should be drawn, under the circumstances of the case, between repairs and replacements. Repairs amounting to replacements of regular equipment cannot be regarded as incidental repairs.

In the third place, charges for all articles not included in the contractor's regular equipment and not lienable as incidental repairs, are lienable provided that the articles were "used exclusively and consumed entirely" in the work. *Rhodes* v. *Riley,* 113 W. Va. 679, 169 S. E. 525.

But recovery here is sought, not directly upon the lien, except in so far as the owner may be required to respond, but under the bond. The bill of complaint herein avers that pursuant to sections 22 and 24 of article 2, chapter 38 of the Code, Virginian & Western Railway Company (owner) required Nelson and Chase & Gilbert Company (principal contractor) to execute a bond "for the payment of all liens and claims of sub-contractors, laborers and materialmen". The bill alleges that the principal contract, which is based upon unit prices and contains no stipulated contract price, and the bond in the penalty of $900,000.00 with Hartford Accident & Indemnity Company as surety, were duly recorded in the office of the clerk of the county court of Wyoming County, and it seeks recovery on the bond and against the surety on the averment that its materialman's lien was properly perfected and is unpaid. Apparently no point was raised as to the sufficiency of this bill of complaint, and, for that reason, the case here does not turn upon that question. Therefore, we do not wish to enter upon an extended dis-

cussion of the bill. Nevertheless, we are impelled to call attention to some of the provisions of the statute under the terms of which plaintiff seeks recovery. Section 22 of article 2 of chapter 38 of the Code, under which it is alleged this bond was given, does not require a bond to be given for the payment of all mechanic's and material-men's liens. It is true that the form set forth in 38-2-24, Code, is so worded, but we look to the requirements of the statute itself and not to the form set out in another section as being a sufficient compliance therewith. *Royal* *Indemnity Co. v. Day, etc.*, 114 Ohio St. 58, 150 N. E. 426, 44 A. L. R. 374. "Statutory bonds, executed in statutory form, must be construed as though laws requiring and regulating them were written therein as respects both principals' and sureties' rights." *New Amsterdam Cas-ualty Co. v. Detroit Fidelity & S. Co.*, (Ark.) 58 S. W. (2d) 418; *Crawford v. Ozark Ins. Co.*, 97 Ark. 549, 134 S. W. 951; *Zellars v. National Surety Co.*, 210 Mo. 86, 108 S. W. 548. Otherwise, the mere form of the bond required to be given, for all practical purposes, would control over the substance of the act itself. Section 22 begins: "Any owner may *limit* his liability upon a con-tract such as is mentioned in section one of this article, *to the sum agreed therein to be paid therefor,* by record-ing", etc. Furthermore, that section in prescribing the condition of the bond to be given reads: "conditioned that in the event any laborer, materialman or other per-son, having perfected his lien as allowed by this article, *be deprived* by the recordation of the owner's contract from receiving from such owner the amount of his lien, *then* such bond and the surety thereon shall be responsi-ble to such lienor for the amount of such lien account", etc. The section in question concludes: "If liens in ex-cess of the contract price are perfected as provided in this article, *the owner shall be liable* to each lien claimant pro rata, in the proportion which the contract price bears to the total amount of the lien so perfected."

By a rule of construction, well recognized in this court, bonds which are given with the plain purpose of comply-ing with some statutory requirement prescribing the con-

dition of the bond are to be read as though given in literal compliance with the statute, adding what is necessary to bring the bond up to the terms of the statute or subtracting whatever is necessary to restrict it to those terms. *Hicks* v. *Randich,* 106 W. Va. 109, 114, 144 S. E. 887; *Chambers* v. *Cline,* 60 W. Va. 588, 55 S. E. 999; *Fireproof Products Company* v. *Logan,* 113 W. Va. 703, 169 S. E. 400. The bond here, according to the averments of the bill of complaint itself, was given pursuant to the statute for the purpose of meeting the requirements of the statute. Consequently, for the purposes of this suit, it would seem to fall within the rule of construction referred to. According to the plain wording of the statute, the purpose of the bond is to enable the owner to protect himself against liens that may be acquired against his property to the extent that their aggregate exceeds the contract price. The surety on the bond, according to its conditions under the statute, is to respond only in the event that the aggregate of the liens exceed the contract price. The owner and his property remain liable to the liens within the contract price and to the extent thereof, the statute itself making the owner liable to each individual lienor in the ratio that the contract price bears to the aggregate of the liens. The evident purpose is to make the surety liable for the remainder only. Section 26 clearly contemplates the ascertainment of this liability on the bond in any suit brought to enforce a lien under article 2 of chapter 38.

We are of the opinion that the bill of complaint in this case should have been framed upon the theory set out above, and, since the cause is to be remanded for further proceedings, plaintiff will be given leave to amend to that effect, should it be so advised.

The surety company assigns as cross-error the fact that the commissioner in chancery and the trial court refused to disturb the application of certain payments made by Nelson and Chase & Gilbert Company to the Bluefield Supply Company aggregating $3992.50. The record shows that from time to time the contractor made payments to the materialman on account of the sub-con-

tractor, in some instances directing the application of the payment and in others making no application. In some instances, the contractor directed the payments to be applied to articles that were clearly not lienable. The payments were all credited on the books of the Bluefield Supply Company in the same manner, that is to say, they were merely run through its machine method of bookkeeping and credited generally to Smith Construction Company. This seems to have been true of the payments that were made with specific direction as to their application as well as of those that were not so made. The surety now contends that this was a general application by the creditor to the payment of the oldest items on the account, and that such an election once having been made cannot be subsequently changed, particularly, as it contends, to the detriment of a surety upon the bond of the person by whom the payment was made. The Bluefield Supply Company, on the other hand, contends that at the time the payments were made it did not exercise its election to apply them, and that the bookkeeping entries made at that time do not constitute such an application and election on its part. It says that, the debtor not having specifically applied the payments when made, it had the full right to elect and to apply these payments at the time that it did make such an election, that is to say, upon the making up of its itemized account to file with its mechanic's lien notice. The bookkeeper of the Bluefield Supply Company testified that this had been the purpose of the company all along. On the issues thus raised, it seems to us that the decision of the question is very largely dependent upon a determination of the facts and of the inferences to be drawn therefrom. These matters have been arrived at by the commissioner in chancery and the trial chancellor, and it is not made to appear that their determination is clearly wrong. We do not believe that this question can be decided in this court as a matter of law on the principles laid down in the case of *Farr* v. *Weaver*, 84 W. Va. 182, 99 S. E. 395, because, in our opinion, no such plain equities as existed in that case are shown to exist here. The general rule undoubt-

edly is that the matter of applying credits is to be adjusted between the debtor and the creditor, and that third persons have absolutely nothing to do with it. It is only when some plainly inequitable result would be arrived at by permitting the application made by either the debtor or the creditor to stand, that the courts will interfere with such an election by making an equitable application of the fund. In the *Farr* case, the owner had given his note to the contractor to be applied upon the materialman's account. The note was indorsed by the contractor to the materialman and applied by him to an indebtedness of the contractor entirely disassociated from the contract under which the money was paid. The materialman, of course, knew where the note came from, and he further knew that the contractor was insolvent. To have permitted the application attempted to be made by the materialman in that case to stand, would have been tantamount to sanctioning the deliberate diversion of a trust fund with knowledge on all hands. In our opinion, no such equities have been shown in the case before us. The decree, being based upon what was evidently found to be an election of Bluefield Supply Company made at a time when it rightfully had the privilege of applying the payments in question, will not be disturbed in this respect.

In any event, we cannot see the basis upon which, under the statute, the surety has a right to complain. If this money originated in the contract, then it naturally emanated from the owner. Under the statute, the owner's responsibility is within the contract price, the surety's attaches when the liens exceed the contract price. Since the interests of the owner and the surety under the statute are not the same, we cannot see why the surety should control the payment of the owner's money. Of course, if the money did not originate in the contract, then there is no basis for even considering the principles invoked.

The Bluefield Supply Company assigns as error the fact that in the commissioner's report and in the trial chancellor's decree, it was allowed interest only from the

date of the filing of its notice of lien, instead of from the date the lienable sums payable to it from the sub-contractor severally became due under its invoices. Interest, when properly laid and claimed in the notice of lien, is lienable. *Bailey* v. *Hull,* 11 Wis. 289, 78 Am. Dec. 706; *Pittsburg Plate Glass Co.* v. *Leary,* 25 S. D. 256, 126 N. W. 271, Annotated Cases, 1912B, 928, 31 L. R. A. (N. S.) 746. Here the interest was claimed in the notice of lien simply as a lump sum in the amount of $844.76. This we believe is not sufficient to entitle the lienor to interest upon each of his invoices from the date that the amount of the invoice became due and payable. Undoubtedly, the spirit of the statute allowing the materialman's lien is toward itemization. He must itemize the articles, price of which is claimed as lienable, and he is not permitted to lump them into one grand total without itemizing. *Fireproof Products Co.* v. *Logan,* 113 W. Va. 703, 169 S. E. 400. We see no reason for applying a different rule as to interest, and since interest was not specifically claimed from the due dates of the several invoices, it is our opinion that the commissioner in chancery and the trial court were right in restricting the allowance of interest to the time from the filing of the notice of lien.

The surety assigns as cross-error the fact that $2600.00 realized by sale of the personal property of Smith Construction Company had not, by the decree, been credited against lienable items of Bluefield Supply Company's account. From the record before us, it seems that the personal property of Smith Construction Company was subjected in this proceeding to an attachment lien of Bluefield Supply Company, and that when that property was sold under the attachment, the Bluefield Supply Company became the purchaser thereof for the sum of $2600.00. It appears that the commissioner in chancery made a preliminary report, not before us, that fixed the liens and their priority against the personal property of Smith Construction Company. The exact disposition of the $2600.00 purchase price, and the reasons therefor do not appear to be adequately presented by this record. Hence,

we see no present reason for attempting to disturb the action of the trial chancellor on this item. Nevertheless, we do not foreclose the surety company from raising this question hereafter if the opportunity to do so should arise, because, under the record here now, we are doubtful that sufficient data for an intelligent disposition of the question is before us.

The record in this case, probably due to the fault of no one, is in extremely unsatisfactory condition. The appellant was given leave to make its motion to modify the decree of the trial chancellor, and only such parts of the record as were required to present the points upon which the appellant depends for its motion to modify, were required to be printed. Other parts of the extremely voluminous record were brought here in original form. Still other parts appear to have been left out entirely. Upon the appellee's assignments of cross-error, no additional parts of the record were printed. Both the appellant and the appellee viewed the record necessary to be presented here upon their theories of presentation in the trial court. We have found it necessary to considerably modify these theories, and, consequently, have found the record, both printed and unprinted, in many respects not adequate to a full consideration of the case as viewed by this court. We have attempted to deal with the matter as painstakingly as this unsatisfactory state of affairs would permit.

In so far as the decree complained of fixed the date from which interest should run as being the date of filing plaintiff's notice of lien, and approved the application of payments made by Bluefield Supply Company, the decree will be affirmed. In all other respects the decree is reversed and the cause remanded for further proceedings in accord with this opinion.

*Affirmed in part; reversed in part; remanded.*