DAVID A. MARSHALL, receiver, *vs.* SAMUEL LANDAU & another.

Suffolk.   January 8, 1941. — January 29, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Contract*, Parties.

An agreement between purported owners of all the capital stock of a corporation and a purchaser of such stock that the purchaser would pay debts of the corporation could not be enforced by a receiver of the corporation afterwards appointed although such purchaser had taken and temporarily held possession of the corporation's business under such agreement.

BILL IN EQUITY, filed in the Superior Court on December 15, 1939, against Samuel Landau, hereinafter called the defendant, and S. & M. Sales Co., Inc., hereinafter called the corporate defendant.

After a hearing by *Swift*, J., a final decree was entered by order of *Brogna*, J.

*C. W. Spencer*, (*P. D. Turner* with him,) for the defendant Landau.

*I. N. Samuels*, (*D. A. Marshall* with him,) for the plaintiff.

RONAN, J.   The plaintiff, who was appointed receiver on July 25, 1939, of Guthro & Harding, Inc., a corporation which had been conducting a restaurant and a tavern in Boston, brings this bill to establish an indebtedness against the defendant Landau who, it is alleged, had entered into an agreement with Guthro & Harding, Inc. (hereafter referred to as the corporation) in June, 1939, to purchase the assets of the corporation upon the payment of $925 and assumption and payment of the debts of the corporation; it is also alleged that Landau (herein referred to as the defendant) took possession of the assets of the corporation and has neglected to pay its creditors with the exception of a single creditor — its lessor.   The bill further seeks to reach and apply in satisfaction of the indebtedness of the defendant his shares of stock in the corporate defendant,

The defendant appealed from a final decree ordering him to pay $3,233.92 with costs to the plaintiff.

The corporation, since its organization in 1934, had conducted a restaurant and tavern in Boston, but, its business having become unprofitable, the directors on May 1, 1939, authorized its treasurer, Frank Lang, to procure a purchaser for its restaurant and tavern. Lang and one Miraglia (an attorney who represented Lang and other stockholders and had also acted as attorney for the corporation) met the defendant and others at various times in reference to a sale of the capital stock of the corporation, which consisted of ten shares pledged with the mortgagee of the personal property of the corporation. As a result of these conferences one Mitchell, who was an attorney for the corporate defendant, all the stock in which with the exception of two qualifying shares was owned by the defendant, drafted an agreement by which Lang, one Gray and one Abrams, who purported to be the owners of all the stock of the corporation, agreed to sell the ten outstanding shares of stock or their interest in them to one Stevenson — the nominee of the defendant — for the sum of $925, and to procure a lease for Stevenson. The latter was to assume and pay all the indebtedness of the corporation up to $4,500, and the sellers were to assume and pay any in excess of this last mentioned amount. The down payment of $925 was to be turned over to Miraglia who was to hold $500 of it until certain conditions were complied with, including the securing of a new lease for Stevenson. The defendant, Mitchell, one Weiner, and Mitchell's brother, an accountant, came to the restaurant on the evening of July 1, 1939, and met Lang and Miraglia. Lang was dissatisfied with the provision in the agreement limiting the assumption of debts to $4,500, but he signed the agreement which already had been signed by Stevenson. Miraglia was to procure the signatures of Gray and Abrams. Lang, however, took the written agreement and retained it until he turned it over to the plaintiff in September, 1939. Mitchell drew a check on the corporate defendant payable to Miraglia in the sum of $925 and gave it to him. But Lang was unwill-

ing to sell the stock unless the defendant agreed to assume all the indebtedness of the corporation, and there was evidence that on that same night the defendant agreed to pay all the indebtedness except what was owed by the corporation for attorney's fees and taxes. Mitchell's brother took account of stock, Weiner tended the bar, and the premises were turned over at midnight to the defendant, who had a new lock put upon the door. Within a few days the old lease which ran to Lang was cancelled and a new one was executed and delivered to Stevenson. The corporate defendant paid the landlord $431.52 for arrears of rent. Miraglia paid the $925 to Lang. It does not appear that the corporation ever received any of this money. No further negotiations were held between the parties. The defendant continued in possession until he was ousted by the receiver shortly after his appointment. The defendant then conducted negotiations with the receiver for the purchase of the assets, but his efforts were unsuccessful and the assets were sold to a third party in September, 1939, for $3,000. The receiver contends that the defendant owes him the difference between the total debts, which amounted to $7,754.18, less the amount of $1,520.26, owed by the corporation for attorney's fees and taxes (and which the parties stipulated should not be included in the indebtedness of the corporation) and less the sum of $3,000 received from the sale, leaving a balance of $3,233.92 which is the amount the judge found was due from the defendant.

The judge made no findings other than the general finding that the defendant was indebted to the plaintiff in the sum of $3,233.92. This finding imports a finding of all subsidiary facts necessary to support it. *Putnam* v. *United States Trust Co.* 223 Mass. 199. *White Tower Management Corp.* v. *Taglino*, 302 Mass. 453. All the evidence has been reported and it is our duty to examine it and to arrive at our own conclusions on questions of fact and of law, but we are not to reverse the finding of the trial judge, who had the opportunity of seeing and hearing the witnesses, unless we are satisfied that his finding of fact is plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79.

*Harding* v. *Studley,* 294 Mass. 193. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398. *Boston* v. *Santosuosso,* 307 Mass. 302. But if the reported evidence does not support the finding for the plaintiff then such finding must be set aside. *Jenkins* v. *Trustees of Andover Theological Seminary,* 205 Mass. 376, 383. *King* v. *Grace,* 293 Mass. 244, 251. *Greeley* v. *O'Connor,* 294 Mass. 527, 532.

The record does not support the plaintiff's claim. We find nothing to indicate that the defendant ever made any agreement with the corporation to purchase its assets for $925 and to assume all or a part of its indebtedness. The only written agreement was between certain persons who represented that they were stockholders and the nominee of the defendant to purchase all the outstanding stock of the corporation and to assume either all or a part of its indebtedness. The only money that was paid was received by Lang, who in fact was not a stockholder, but who represented his wife who, he testified, was a stockholder although she was not a party to the agreement to sell the outstanding stock. The only other payment made in behalf of the defendant was made to the lessor for the arrears of rent, owed by Lang under a lease of the premises which were occupied by the corporation. No effort was made to secure the signature of Abrams who was represented on the agreement to be a stockholder. No executed agreement was ever delivered to the defendant. Miraglia testified that he represented his uncle, Lang, in this transaction. The check for $925 shows that he received this money as attorney for Lang. The receiver sold the assets which he now contends had been purchased more than two months before by the defendant although, upon the testimony, he did not know at the time of the sale of any previous agreement with the defendant by which he became the purchaser. The defendant, neither at the time the receiver took possession of the restaurant nor while he was negotiating with the receiver for the purchase of the assets, claimed that these assets belonged to him. His silence might be material if it were proved that he had agreed to assume and pay the indebtedness of the corporation. But the only agreement shown to

have been made by the defendant was with Lang, who was acting for his wife and for the other stockholders but not for the corporation. The corporation was a stranger to that agreement and could not enforce it even though the agreement to pay its debts would be beneficial to it. The defendant took possession of the corporate business by virtue of an agreement with the individual stockholders and not as vendee of the corporation. *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139. *Exchange Realty Co.* v. *Bines,* 302 Mass. 93.

<div style="text-align:right">

*Decree reversed.*

*Bill dismissed with costs.*