ATLAS POWDER CO. *v.* NELSON AND CHASE & GILBERT CO. *et al.*

(No. 9224)

Submitted February 24, 1942.  Decided April 11, 1942.

*Johnson & Johnson* and *Charles C. Gammon,* for appellant.

*Fitzpatrick, Strickling & Marshall,* W. C. *Plunkett* and *Scott & Ducker,* for appellee.

LOVINS, JUDGE:

The Atlas Powder Company instituted a chancery suit in the Circuit Court of Wyoming County for the purpose of recovering from Nelson and Chase & Gilbert Company, Hartford Accident and Indemnity Company, The Virginian & Western Railway Company and the M. P. Smith Construction Company, the sum of $21,586.41 and interest, for explosives furnished the M. P. Smith Construction Company and used by it as subcontractor for Nelson and Chase & Gilbert Company, in the construction of three tunnels for the Railway Company. The Utilities Power and Light Company, and later its trustee in bankruptcy, Charles True Adams, became a defendant herein by its petition asserting a claim of $37,365.33, with interest, against Nelson and Chase & Gilbert Company, and adverse to the interests of the appellant herein, payment of which claim was reserved for future consideration by the final decree. From a decree of the circuit court dismissing the bill of complaint, the Atlas Powder Company appeals.

In May, 1931, Nelson and Chase & Gilbert Company, hereinafter called "contractor", entered into a contract with the Railway Company for the construction of railroad subgrade and tunnels in Mingo and Wyoming Counties. The estimated cost of the entire work was $900,000.00 and an indemnity bond was executed in accordance with the contract provisions in the penalty of that amount with the contractor as principal and the Hartford Accident & Indemnity Company as surety thereon, to secure the Railway Company in the performance of the contract. The contract and the bond were recorded in Wyoming County on July 13, 1931, and in Mingo County on August 8, 1931. On June 18, 1931, the contractor by letter awarded to the M. P. Smith Construction Company, hereinafter referred to as "subcontractor", a contract for the tunnel

work, pursuant to which letter a formal contract was executed and the subcontractor began work early in July, 1931. This contract called for completion of the tunnel work on or before January 15, 1932, and provided that payment was to be made on the basis of monthly estimates of work completed, ninety per cent of which was to be paid to the subcontractor and ten per cent retained by the contractor until completion of the work and acceptance of same by the Railway Company; it was also provided that the contractor reserved the right to pay part or all of such ninety per cent of the monthly estimates directly to those furnishing labor, materials and machinery as well as the aforesaid ten per cent of the monthly estimates. The subcontractor purchased explosives from appellant from July, 1931, until June, 1932, aggregating $23,306.07, which total amount is reduced to $21,586.41 by certain credit memoranda and a payment of $1,000.00 by the contractor in February, 1932, the only payment ever made to appellant on subcontractor's account. Payments on the monthly estimates of completed work were made by contractor to subcontractor until January 20, 1932. Some difficulty arose as to subcontractor not paying its creditors, including appellant, and after that date the contractor retained all of the payments from the Railway Company on the monthly estimates of completed work on the tunnel project, and opened an account in a local bank, using same to pay supply and material bills and labor charges incurred by subcontractor. Under this arrangement, the work was completed about September, 1932, the contractor having paid out some three thousand dollars more than the amount so received and retained. In March, 1932, the subcontractor delivered to appellant an order directing the contractor to pay appellant its accrued indebtedness, and any money for materials thereafter becoming due. At that time the subcontractor's account with appellant was over twenty thousand dollars. On March 24, 1932, contractor accepted this order, with a written notation thereon that acceptance was subject to the terms of its contract with subcontractor.

Appellant never filed a mechanic's lien, based upon the claim asserted herein, however, in August, 1932, numerous mechanics' liens were being filed by creditors of the subcontractor and suits were being instituted for the enforcement of such liens. The suits pending in Wyoming County were consolidated into that of *Bluefield Supply Co.* v. *M. P. Smith Construction Company and others,* reported in 115 W. Va. 537, 177 S. E. 296. An arrangement was effected in September, 1932, between the contractor, the Railway Company and the Surety, whereby all amounts accruing to contractor, from the entire contract, would be placed in a separate account, supervised by the Surety, to pay liens, costs and expenses. From this account, appellant contends that in January, 1933, certain claims were paid in the absence of service of mechanics' lien notices on the Railway Company, and without having submitted the validity of such liens to the court wherein they were pending. It is argued by appellant that the contractor and the Surety should be compelled to reimburse the fund of the subcontractor for sums expended in the payment of such invalid liens.

After the execution of the main contract between contractor and the Railway Company, contractor borrowed $35,000.00 from the Utilities Power and Light Company, executing and delivering to the Utilities Company its note therefor and as collateral security a written assignment, dated July 9, 1931, of all retained percentages from the monthly estimates, due or to become due to contractor from the Railway Company under the main contract. No notice of such assignment was given to the Railway Company until April, 1933, and no effort was made by the Utilities Company to collect on the same until the filing of its petition in this suit. Appellant contends that by the very terms of the assignment, the Utilities Company became bound with knowledge of the terms of the main contract as to payment for labor and materials, and that any rights of the Utilities Company obtained by the assignment are inferior to the claim of the appellant asserted herein.

At the time of the institution of this suit and even before the completion of the tunnel project, subcontractor was hopelessly insolvent; there remains in the hands of the surety some $25,000.00, which fund accrued from the percentages of monthly estimates retained under the principal contract placed in the supervision of the surety under the arrangement hereinbefore mentioned.

The principal contention of appellant is that its claim against subcontractor is covered by the main contract and the bond and that thereunder contractor and surety are liable for debts and obligations of the subcontractor, including the debt herein though it was not perfected as a mechanic's lien. The other points, regarding the application of funds by surety and contractor to invalid liens, and the preference of appellant's claim over that of the Utilities Company, have been mentioned hereinbefore.

Following submission of the cause upon bill, answers, replications, depositions and exhibits, the circuit court made the following findings:

(1) That the bond was given by contractor in accordance with Code, 38-2-22, and appellant, having failed to. perfect a mechanic's lien, can not recover on the bond;

(2) That contractor did not guarantee payment of appellant's account against subcontractor;

(3) That contractor's assignment to Utilities Company is superior to that of subcontractor to appellant; and that appellant has no right to the fund in the hands of the surety; and

(4) That the funds accruing to subcontractor from monthly estimates were properly disbursed.

As before stated, appellant's bill was dismissed and the questions in regard to payment of the Utilities Company claim were reserved for further consideration.

In considering the question of liability on the bond, it is necessary to refer to the contract and bond provisions and the statute, referred to in the decree of the circuit court. In the main contract, the contractor agreed "to be held responsible for the payment of all labor, supplies and material furnished for all the work embraced in this contract, whether such work is done directly by him or a sub-

contractor under him." The condition in the bond required contractor to "well and truly carry out, perform and fulfill all the covenants and agreements on its part in said contract in writing contained", and further to "pay off, satisfy and discharge all claims of subcontractors, laborers and materialmen and all persons furnishing material or doing work upon the said (Railway Company)." Article 2 of Chapter 38 deals with mechanics' liens and the establishment and enforcement thereof. Section 4 of that article gives to a person furnishing a subcontractor materials, a lien for compensation therefor on the building or structure involved. (In *Bluefield Supply Co. v. Smith Construction Co., supra,* this Court held that a railway tunnel is a "structure" within the meaning of Code, 38-2-4.) Section 22 of the same article provides that an owner may limit his liability upon the construction contract to the contract price therefor by recording, in the county where the building or structure is situate, the contract and a bond of the general contractor in a penalty equal to the contract price, for the protection of any laborer, materialman or other person "having perfected his lien as allowed by this article."

The argument of counsel on this question is based upon the question of the intent of contractor and the Railway Company in including in the contract the broad language quoted, followed in effect by the wording of the condition of the bond, and in recording the contract and bond in both Wyoming and Mingo Counties. Appellant contends that since the language of the contract and bond, in its inclusion of all construction expenses, not limited to those perfected as mechanics' liens, is broader in effect than that of the statute, it evinces an intent of the contractor and the Railway Company to assume such obligations beyond the scope of the statute. The provisions of Section 22 are not compulsory, and appellant argues that the parties to the main contract, in the enjoyment of freedom of contract about their private property and affairs, made contractor liable for all construction debts, dedicated all construction money to that purpose, and

required a bond conditioned for payment of these debts. On the other hand, it is pointed out that the statute was followed in its provisions relating to amount of the bond in the contract price, and the recording in both counties where the structure was located. There is also the testimony of the Assistant General Solicitor of the Railway Company that the contract and bond were recorded in compliance with the mechanic's lien law. We note also the following statement in the opinion in *Bluefield Supply Company* case, referring to the identical bond, "The suit seeks recovery upon a bond given pursuant to section 22, article 2, chapter 38, of the Code * * *".

The circuit court made a finding of fact in its final decree that the bond "was given in accordance with Chap. 38, Art. 2, Sec. 22, * * * for the purpose of protecting the defendant Virginian and Western Railway Company against liens filed against its property exceeding the contract price * * *". Under well-established and long followed principles we would have to say that such a finding was plainly wrong, in order to disturb the same. Under the facts and circumstances herein presented, and the further fact that this Court in a prior decision treated the same bond as being given pursuant to the statute, we are unable to hold that the trial chancellor was plainly wrong.

Having affirmed the finding of the circuit court that the bond was so given, the fact that its language, read with that of the main contract, is broader than the statute, is of no material effect. "By a rule of construction, well recognized in this court, bonds which are given with the plain purpose of complying with some statutory requirement prescribing the condition of the bond are to be read as though given in literal compliance with the statute, adding what is necessary to bring the bond up to the terms of the statute or subtracting whatever is necessary to restrict it to those terms." *Bluefield Supply Co.* v. *Construction Co., supra; Products Co.* v. *Logan,* 113 W. Va. 703, 169 S. E. 400; *Supply Co.* v. *Mason,* 103 W. Va. 318, 137 S. E. 356. It follows that appellant has shown no right of

recovery on the contract and bond, since its claim was never perfected as a lien under the provisions of Article 2, Chapter 38.

We now come to a consideration of the conflicting claims of appellant and the Utilities Company, relating to the money in the possession of the Railway and Surety Companies, which is a part of the amount withheld under the principal contract.

The appellant contends that the contract expressly prohibited the assignment to the Utilities Company, in the following terms: "The CONTRACTOR agrees not to transfer this contract, or sublet the whole or any part of the work hereunder to any person (excepting for the supply of material) without the written consent of the CHIEF ENGINEER and the COMPANY." It is apparent from a cursory reading of the part of the contract just quoted that it prohibits the contractor from shifting to another the performance of the work thereunder without the consent of the Railway Company. It does not interdict the assignment of the money which the contractor was to receive as his compensation. The work to be done under the contract is to be distinguished from the compensation due for the performance thereof. One is a duty; the other a property right. The contractor "did not assign or sublet the contract by giving an order on the fund arising from its performance." *Brace* v. *Gloversville,* 167 N. Y. 452, 60 N. E. 779. If this contract were unassignable as an entirety because of personal trust and confidence, this would not prevent assignment of a portion of the compensation earned under it. *In re Wright,* (C. C. A. 2d) 157 F. 544, 18 L. R. A. (N. S.) 193. We know of no inherent quality in the right assigned which prevented the contractor from transferring his right to the Utilities Company. Money earned by a contractor in a building contract may be assigned. *Twentieth Street Bank* v. *Summers,* 90 W. Va. 90, 110 S. E. 478; *Adler* v. *Railroad Co.,* 92 Mo. 242, 4 S. W. 919. No objection is made to the assignment by the Railway Company; it seems neutral as between the appellant and the Utilities Company. The case of *White*

v. *Raleigh-Wyoming Mining Co.,* 113 W. Va. 522, 168 S. E. 798, is distinguishable. There one of the parties to the contract objected to assignment.

We agree that the contractor could give no greater or better right to its assignee than it had. This is true of the assignment made by contractor to the Utilities Company, as well as the assignment made by subcontractor to appellant. There is money due from the Railway Company, the right to which was assigned to the Utilities Company, whereas there is no money due subcontractor from contractor, it having elected to pay the liens of laborers and materialmen under the terms of its contract.

We do not agree that under the terms of the contract there was created a fund for the benefit of the appellant who failed to perfect its lien under Article 2, Chapter 38, Code. The appellant was not a party to the principal contract, nor was there any stipulation or provision therein for its benefit. The provisions of the contract with reference to retaining a percentage of the compensation due the contractor were for the benefit of the owner and the surety on the contractor's bond. *Supply Co.* v. *Webb,* 112 W. Va. 622, 166 S. E. 281. As to laborers and materialmen, the statute makes provision for them, which they may or may not utilize. Admittedly, the appellant has no assignment from the contractor, but it urges that the contract earmarked the money retained by the Railway Company for its benefit. The books are replete with opinions holding that the surety on the contractor's bond and persons holding perfected liens are entitled to be paid out of a fund so created; but we fail to find authority supporting the contention that a creditor who has sold materials to a subcontractor and failed to preserve the lien given by statute, is entitled to resort thereto.

The appellant complains of the improper disbursement of funds of M. P. Smith Construction Company, of which $10,989.21 was authorized by decree of the trial court in the case of *Bluefield Supply Co.* v. *Construction Co., supra.* Appellant knew that subcontractor was in a precarious financial condition, and could have been made a party to

the suit in which the moneys were disbursed, and then and there protected its interest. Not having done so, its complaint now is in the nature of a collateral attack on the decrees of a court of general jurisdiction.

The decree appealed from made reservation as to payments to be made to the Trustee of the Utilities Company; for that reason this cause is remanded for further proceedings. We affirm the trial chancellor and remand the cause.

*Affirmed and remanded.*

Rose, Judge, concurring (on denial of rehearing):

From the petition for rehearing and the brief filed therewith, it would appear that the appellant has largely misapprehended the scope and effect of our decision herein. In the petition it is alleged that in disposing of this appeal, this Court fell into "error" in eight particulars. However, the only ground for rehearing which is at all stressed is that relating to our holding that the Atlas Powder Company has no right of action on either the original contract between the owner and the principal contractor, or on the bond executed by the latter. It is argued that we have established a rule which will make it impossible for an owner and a building contractor to make an agreement binding the latter to pay for labor or materials furnished to a subcontractor, or for the contractor to procure and give a valid bond for that purpose.

A simple reading of the opinion and syllabus in this case ought to make it perfectly apparent that we went no further than to hold that the Atlas Powder Company in this particular case has not shown any right of action on the contract or bond involved herein. We most certainly did not say that either the contract or the bond could not have been written so as to give such right of action. It was, of course, clearly possible for The Virginian & Western Railway Company, and Nelson and Chase & Gilbert Company to make a contract between themselves which would inure to the benefit of the powder company and of

any other creditor of the sub-contractor. There would thus have been created the common and familiar status of a third party beneficiary. The railway company or the contractor might have been under contractual obligations to the powder company, and could most certainly have contracted for the other to discharge that liability, thereby making the powder company a "contract beneficiary" with enforceable rights. Or the original contracting parties may have owed the powder company nothing, but still have had a benevolent desire to give or create a gratuitous right in that company, in which case a contract could have been so written as to make the powder company a "donee beneficiary." But the intention to create such donee beneficiary must be made clearly to appear. Ordinarily, such donations, or gratuitous benefits, are not made to strangers. *In re United Cigar Stores Co. of America,* 70 Fed. 2d 313; *Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 271 P. 898; *Byram Lumber & Supply Co.* v. *Page,* 109 Conn. 256, 146 A. 293; *East Coast Stores* v. *Cuthbert,* 101 Fla. 25, 133 So. 863; *Tetelman* v. *Fulton,* 168 Misc. 803, 6 N. Y. S. 2d 530; *Casey* v. *Watts* (Tex.), 130 S. W. 2d 396; *Acierno* v. *North Shore Bus Co.,* 173 Misc. 79, 17 N. Y. S. 2d 170; *Associated Flour Haulers and Warehousemen* v. *Hoffman,* 282 N. Y. 173, 26 N. E. 2d 7; *Percival* v. *Luce,* 114 Fed. 2d 774.

But a situation may arise under a contract by which a third party is neither a "contract beneficiary" nor a "donee beneficiary," but as a practical fact will be benefited by the performace of the contract between the other parties thereto. Such a party is an "incidental beneficiary," with no right of action on the contract. *Phez Co.* v. *Salem Fruit Union,* 113 Ore. 398, 233 P. 547; *Chicago, R. I. & P. Railway Co.* v. *Maryland Casualty Co.,* 75 Fed. 2d 596; *Brown* v. *Fogarty,* 221 Ala. 283, 128 So. 376; *State* v. *Padgett,* 54 N. D. 211, 209 N. W. 388; *Higgins* v. *Monckton,* 28 Cal. App. 2d 723, 83 P. 2d 516; *Hanssel* v. *P. Tomasetti Contracting Corporation,* 8 N. Y. S. 2d 873; *Watson* v. *American Creosote Works, Inc.,* 184 Okla. 13, 84 P. 2d 431; *Price* v. *Lee* (Tex.), 119 S. W. 2d 673; *Kelly* v. *Richards,* 95 Utah 560,

83 P. 2d 731, 129 A. L. R. 164; *Cherry* v. *Aetna Casualty Co.,* 372 Ill. 534, 25 N. E. 2d 11; *Crown Fabrics Corporation* v. *Northern Assurance Co., Ltd.,* 124 N. J. L. 27; 10 A. 2d 750; *Borough of Brooklawn* v. *Brooklawn Housing Corporation,* 124 N. J. L. 73, 11 A. 2d 83; *Barratt* v. *Greenfield,* 137 Pa. Super. 310, 9 A. 2d 188; *Ball* v. *Cecil,* 285 Ky. 438, 148 S. W. 2d 273; *Marshall* v. *Landau,* 308 Mass. 239, 31 N. E. 2d 540; *Hartford Accident & Indemnity Co.* v. *Hewes,* 190 Miss. 225, 199 So. 93, 772.

The Atlas Powder Company, in the present case, if a beneficiary at all, is at best, a mere incidental beneficiary, both as to the original contract and as to the bond executed by the general contractor. Consider first the contract. In the bill of complaint, the powder company claimed recovery thereon, and in the petition for appeal, the trial court's denial of such right was assigned as error. But in a brief filed on the original hearing before this Court, this claim is not emphasized or clearly mentioned. From this we might well have concluded that the appellant had abandoned this ground of error or had found no authority to sustain the same. But, whether abandoned or not, we consider the position untenable. The contract in question appears to be in a standard form frequently used in this and other states, yet never before has there come to this Court a claim against a principal contractor based on such a contract, for the recovery of the price of materials furnished to a subcontractor. If such a contract creates such a right, that right would seem to have been but lately discovered.

The principal contention of the appellant, however, upon the original hearing here and upon the petition for rehearing, has been to the effect that it is entitled to recover on the bond executed by the principal contractor. But this bond was plainly given pursuant to Code, 38-2-22, 23 and 24. It is in the amount required by the statute; it contains verbatim all the recitals and conditions of the form of bond suggested by the statute; it is recorded as in the manner required by the statute; it must, therefore, be

given the effect, and only the effect, prescribed in the statute for such a bond. Section 22 reads as follows:

"Any owner may limit his liability upon a contract such as is mentioned in section one of this article, to the sum agreed therein to be paid therefor, by recording his contract with such general contractor, in the office of the clerk of the county court of the county wherein such building or other structure is situate, prior to the beginning of the building, erection and construction thereof, and by requiring to be given by his general contractor, and by recording with such general contract, a valid and solvent bond, in a penalty equal to the contract price, with solvent surety, conditioned that in the event any laborer, materialman or other person, having perfected his lien as allowed by this article, be deprived by the recordation of the owner's contract from receiving from such owner the amount of his lien, then such bond and the surety thereon shall be responsible to such lienor for the amount of such lien account, or for any balance thereof not collected by such lienor from such owner and from such property."

We see no possible theory upon which it can be said that there is any beneficiary of the bond thus provided for except (1) the owner, and (2) laborers and materialmen and other persons who have perfected liens for their claims. There are no benefits provided for any non-lien claimant against the owner, the contractor, the subcontractor or anyone else. And the appellant here is a non-lien claimant. The practical operation of this statute is that the giving of such a bond limits the liability of the landowner under the mechanics' lien law to the amount stated in his contract, and to cast on the bondsmen the burden of all liens in excess of that amount. The giving of the bond, therefore, to this degree, operates as a benefit to the owner, but it also operates to deprive the holders of liens in excess of the contract price of their otherwise valid claims against the owner's property, and to give such lienors in lieu of the rights thus taken away a right of action on the bond. By its very terms, the statute pur-

ports to protect nobody whatsoever except materialmen and laborers who have reduced their claims to liens. The very conditions of the bond, as expressly set out in the section above quoted, limit the liability thereon to these parties. If this section were the whole of the statute, we think there would not even be any question raised by the appellant.

But section 24 purports to provide a form of bond to be used in such cases. It reads:

"The bond referred to in section twenty-two of this article shall be sufficient if in form and effect as follows: * * * now, therefore, if the said . . . shall well and truly perform his said contract, *and shall pay off, satisfy and discharge all claims of subcontractors, laborers, materialmen and all persons furnishing material or doing work upon said building* and shall save the said . . . and his property harmless from any and all liability, over and above the contract price thereof, between the said owner and the said contractor, for all of such labor and materials, and shall fully pay off and discharge and secure the release of any and all mechanics' liens which may be placed upon said property by any such subcontractor, laborer or materialman, then this obligation shall be null and void. Otherwise it shall remain in full effect. * * *." (Italics supplied)

It might appear that the conditions of the bond suggested (but not in any sense required) by this section include more than is made requisite in the bond provided for in section 22. The bond required in section 22 does not make the bondsmen liable to "satisfy and discharge all claims of subcontractors, laborers, materialmen and all persons furnishing material or doing work upon said building." The appellant, therefore, contends that the form of bond suggested (but not required) by section 24 is broader than the bond actually required by section 22, and bases its claim on the words italicized in the quotation of section 24. We consider this question foreclosed by our decision in *Fireproof Products Co. v. Logan et al.*, 113 W. Va. 703, 169 S. E. 400, in which, upon a precisely similar

claim made on a precisely similar bond, given under this statute, we held that no recovery could be had on the bond.

In the case of *Bluefield Supply Co.* v. *Smith Construction Co.*, 115 W. Va. 537, 177 S. E. 296, the identical bond here involved was considered and appraised, and, whether that decision is binding here or not, upon reconsideration of the statute, we have arrived at the same conclusions therein announced.

Moreover, we are constrained to reach the same conclusion from a wholly different approach. Sections 22 to 24, above considered, first came into our statutory law by Chapter 6, Acts of 1917. That act is entitled: "An act to amend and re-enact chapter seventy-five (75) of the code of West Virginia of one thousand nine hundred and thirteen, entitled 'lien for purchase money, and lien of mechanics, laborers, and others.'" By its title, the act, therefore, was confined exclusively to the liens mentioned therein. Any provision in the act which might be construed as relating to claims other than liens would be wholly outside the title, and, therefore, unconstitutional. It follows thus that all conditions in the suggested form of bond must be construed as relating to liens or be held nullities. If we construe the condition to "pay off, satisfy and discharge all claims of subcontractors, laborers, materialmen and all persons furnishing material or doing work upon said building," as relating only to the claims intended by section 22 to be protected by the bond, it will be constitutional, and will be thoroughly consistent with that section. If we construe it as covering non-lien claims for labor and material in general, it is outside the title of the act by which the law came into existence, and, therefore, unconstitutional. In either case, it can give rise to no cause of action in the appellant.

Nor can this bond be treated in the aspect of a common law bond, nor as both a common law and a statutory bond. Such a combination could have been executed and been valid. But there is nothing written in this bond, beyond what the statute requires, on which the plaintiff could

have based an action. The variations from the statutory form are either immaterial or do not concern the appellant.

In conclusion, let it be repeated and emphasized that we have not said that a binding contract or a binding contractor's bond cannot be so written as to enable those furnishing labor and materials to subcontractors to recover thereon. Unquestionably, such a contract or bond could be so drafted, executed and enforced. We have simply said that this particular furnisher of material in this particular case has not shown that it is entitled to recover on this particular contract or this particular bond.

Judge Fox authorizes me to state that he concurs in this note.